UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| CAROL S. GOODMAN, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CAUSE NO. 3:19-cv-00333-RLM-SLC |
| | ) |
| COMMISSIONER OF SOCIAL | ) |
| SECURITY, *sued as Andrew M. Saul,* | ) |
| *Commissioner of Social Security,*[1] | ) |
| | ) |
| Defendant. | ) |

## REPORT AND RECOMMENDATION

Plaintiff Carol S. Goodman appeals to the district court from a final decision of the Commissioner of Social Security ("Commissioner") denying her application under the Social Security Act (the "Act") for Supplemental Security Income ("SSI"). (ECF 1). The appeal was referred to the undersigned Magistrate Judge on August 29, 2019, by District Judge Robert L. Miller pursuant to 28 U.S.C. § 636(b), Federal Rule of Civil Procedure 72(b), and this Court's General Order 2018-14A for the issuance of a Report and Recommendation. (ECF 14).

Having reviewed the record and the parties' arguments, I find one of Goodman's two arguments to be persuasive. Accordingly, I RECOMMEND that the Commissioner's decision be REVERSED and REMANDED for further proceedings. This Report and Recommendation is based on the following facts and principles of law.

---

[1] Andrew M. Saul is now the Commissioner of Social Security, *see*, *e.g.*, *Saunders v. Saul*, 777 F. App'x 821 (7th Cir. 2019); *Michael T. v. Saul*, No. 19 CV 1519, 2019 WL 3302215, at *1 n.2 (N.D. Ill. July 23, 2019), and thus, he is automatically substituted for Nancy A. Berryhill in this case, *see* Fed. R. Civ. P. 25(d).

## I.  FACTUAL AND PROCEDURAL HISTORY

Goodman applied for SSI on March 7, 2016, alleging disability as of August 15, 1991. (ECF 10 Administrative Record ("AR") 112, 261-62).  Goodman's claim was denied initially and upon reconsideration.  (AR 157-66, 168-80).  After a timely request (AR 198-200), a hearing was held on December 18, 2017, before administrative law judge ("ALJ") Genevieve Adamo, at which Goodman, who was represented by counsel, and a vocational expert ("VE") testified.  (AR 131-56).  On April 3, 2018, the ALJ rendered an unfavorable decision to Goodman, concluding that she was not disabled because she could perform her past relevant work as a cleaner.  (AR 109-30).  Goodman's request for review was denied by the Appeals Council (AR 1-7), at which point the ALJ's decision became the final decision of the Commissioner, *see* 20 C.F.R. § 416.1481.

Goodman filed a complaint with this Court on April 29, 2019, seeking relief from the Commissioner's decision.  (ECF 1).  In her appeal, Goodman alleges that the ALJ (1) failed to account for certain "check-box" social interaction limitations assigned by state-agency psychologists during their evaluation of Goodman, and (2) failed to account for Goodman's limitations in concentration, persistence, or pace while assigning her residual functional capacity ("RFC").  (ECF 17).

At the time of the ALJ's decision, Goodman was fifty-one years old (AR 136, 157, 284), had a ninth-grade education (AR 137, 289), and had relevant work experience as a cashier, housekeeper, and cleaner (AR 123, 289).  In her application, Goodman alleged disability due to AC coronary syndrome, chronic bipolar disorder, chronic cystitis, chronic depression, dyslipidemia, "respiratory crackles," and "suicidal."  (AR 157-58, 288).

2

## II. STANDARD OF REVIEW

Section 405(g) of the Act grants this Court "the power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the [Commissioner], with or without remanding the cause for a rehearing."  42 U.S.C. § 405(g).  The Court's task is limited to determining whether the ALJ's factual findings are supported by substantial evidence, which means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Schmidt v. Barnhart*, 395 F.3d 737, 744 (7th Cir. 2005) (citation omitted).  The decision will be reversed only if it is not supported by substantial evidence or if the ALJ applied an erroneous legal standard.  *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000) (citation omitted).

To determine if substantial evidence exists, the Court reviews the entire administrative record but does not reweigh the evidence, resolve conflicts, decide questions of credibility, or substitute its judgment for the Commissioner's.  *Id.*  Rather, if the findings of the Commissioner are supported by substantial evidence, they are conclusive.  *Jens v. Barnhart*, 347 F.3d 209, 212 (7th Cir. 2003) (citation omitted).  "In other words, so long as, in light of all the evidence, reasonable minds could differ concerning whether [the claimant] is disabled, we must affirm the ALJ's decision denying benefits."  *Books v. Chater*, 91 F.3d 972, 978 (7th Cir. 1996).

## III. ANALYSIS
### A. The Law

Under the Act, a claimant is entitled to SSI if she establishes "[she] is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less

3

than twelve months." 42 U.S.C. § 1382c(a)(3)(A).  A physical or mental impairment is "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 1382c(a)(3)(D).

The Commissioner evaluates disability claims pursuant to a five-step evaluation process, requiring consideration of the following issues, in sequence:  (1) whether the claimant is currently unemployed; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment or combination of impairments meets or equals one of the impairments listed by the Commissioner, *see* 20 C.F.R. § 404, Subpt. P, App'x 1; (4) whether the claimant is unable to perform her past work; and (5) whether the claimant is incapable of performing work in the national economy.[1] *See Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001) (citations omitted); 20 C.F.R. § 416.920.  An affirmative answer leads either to the next step or, on steps three and five, to a finding that the claimant is disabled. *Zurawski v. Halter*, 245 F.3d 881, 886 (7th Cir. 2001) (citation omitted).  A negative answer at any point other than step three stops the inquiry and leads to a finding that the claimant is not disabled. *Id.* (citation omitted). The burden of proof lies with the claimant at every step except the fifth, where it shifts to the Commissioner. *Clifford*, 227 F.3d at 868 (citation omitted).

## B.  The Commissioner's Final Decision

On April 3, 2018, the ALJ issued the decision that ultimately became the Commissioner's final decision.  (AR 112-25).  At step one of the five-step analysis, the ALJ found that Goodman

---

[1] Before performing steps four and five, the ALJ must determine the claimant's RFC or what tasks the claimant can do despite her limitations.  20 C.F.R §§ 416.920(e), 416.945(a).  The RFC is then used during steps four and five to help determine what, if any, employment the claimant is capable of.  20 C.F.R. § 416.920(e).

4

had not engaged in substantial gainful activity since her application date, March 7, 2016. (AR 114). At step two, the ALJ found that Goodman had only one severe impairment: bipolar disorder. (*Id.*). At step three, the ALJ concluded that Goodman did not have an impairment or combination of impairments severe enough to meet or equal a listing. (AR 115).

Before proceeding to step four, the ALJ determined that, while Goodman's impairments could be reasonably expected to cause her alleged symptoms, her statements concerning the "intensity, persistence and limiting effects of these symptoms are not entirely consistent" with the record. (ECF 118). The ALJ assigned her the following RFC:

> [T]he claimant has the [RFC] to perform a full range of work at all exertional levels but with the following nonexertional limitations: she [is] able to understand, carry out, and remember simple, routine, and repetitive tasks with no production rate or pace work with only occasional simple work-related decision making required. She can maintain attention and concentration for two hour intervals. The claimant could respond appropriately to occasional changes in the workplace, which are gradually introduced. The claimant could have occasional interactions with supervisors apart from what is necessary for general instruction, task completion, or training and occasional interactions with coworkers, no tandem tasks, and no interaction with the general public.

(AR 117). At step four, the ALJ found Goodman was capable of performing her past relevant work as a "cleaner, housekeeping" as it was actually and is generally performed. (AR 123). In the alternative, the ALJ found at step five that Goodman could perform jobs that exist in significant numbers in the national economy—specifically (1) cleaner, commercial, (2) hand packager, and (3) cleaner 2. (AR 124). Accordingly, Goodman's application for SSI was denied. (AR 125).

5

## IV.  ANALYSIS

Goodman's arguments center on the ALJ's analysis of her alleged social interaction deficits and limitations in concentrating, persisting or maintaining pace.  Primarily, she asserts that the ALJ's RFC determination is not supported by substantial evidence because she failed to account for the moderate "check-box" limitations found by the state agency doctors reviewing her application and medical record.  (ECF 17 at 13-18).  As Goodman notes, Dr. Kenneth Neville, Ph.D., found in the body of his report that Goodman had the following moderate social interaction limitations:  (1) she is moderately limited in her ability to interact appropriately with the general public, (2) in her ability to accept instructions and respond appropriately to criticism from supervisors, and (3) in her ability to get along with coworkers or peers without distracting them or exhibiting behavioral extremes.  (AR 163).  Dr. Neville further found that Goodman had the following moderate concentration, persistence or pace limitations:  (1) she is moderately limited in her ability to carry out detailed instructions, and (2) in her ability to maintain attention and concentration for extended periods.  (AR 163).  Dr. B. Randal Horton, Psy.D., also a state agency doctor, found these same limitations at the reconsideration level.  (AR 175-76).

At steps two and three of the sequential evaluation, the ALJ determines the severity of a claimant's mental impairment by assessing her degree of functional limitation in categories identified in the "paragraph B" and "paragraph C" criteria of the adult mental disorders listings. SSR 96-8p, 1996 WL 374184, at *4 (July 2, 1996).  Relevant to this appeal, the "paragraph B" criteria consist of four broad functional areas:  understand, remember, or apply information; interact with others; concentrate, persist, or maintain pace; and adapt or manage oneself.  20 C.F.R. § 416.920a(c)(3); *see, e.g.*, *Johnnie M. v. Berryhill*, No. 2:18-cv-00066-MJD-JMS, 2019 WL 521176, at *3 (S.D. Ind. Feb. 11, 2019); *Brynelson v. Berryhill*, 329 F. Supp. 3d 629, 638

n.6 (N.D. Ill. 2018). "[T]he limitations identified in the 'paragraph B' criteria and 'paragraph C' criteria are not an RFC assessment but are used to rate the severity of mental impairment(s) at steps 2 and 3 of the sequential evaluation process." SSR 96-8p, 1996 WL 374184, at *4.

"The mental RFC assessment used at steps 4 and 5 of the sequential evaluation process requires a more detailed assessment by itemizing various functions contained in the broad categories found in paragraphs B and C . . . ." *Id.*; *see Virden v. Astrue*, No. 11-0189-DRH-CJP, 2011 WL 5877233, at *9 (S.D. Ind. Nov. 4, 2011). "RFC is what an individual can still do despite his or her limitations." SSR 96-8p, 1996 WL 374184, at *2; *see* 20 C.F.R. § 416.945(a)(1). "The RFC assessment must be based on *all* of the relevant evidence in the case record . . . ." SSR 96-8p, 1996 WL 374184, at *5; *see* 20 C.F.R. § 416.945(a)(3). That is, "[i]n assessing RFC, the adjudicator must consider limitations and restrictions imposed by all of an individual's impairments, even those that are not 'severe.'" SSR 96-8p, 1996 WL 374184, at *5; *see Paar v. Astrue*, No. 09 C 5169, 2012 WL 123596, at *13 (N.D. Ill. Jan. 17, 2012).

Here, at step three, the ALJ found Goodman's "abilities to relate to and work with supervisors, co-workers, and the public are not more than moderately limited," while "[w]ith regard to concentrating, persisting, or maintaining pace, [she] has a moderate limitation." (AR 116). Proceeding to step four, the ALJ assigned Goodman the following RFC in the relevant part:

> [Goodman is] able to understand, carry out, remember simple, routine, and repetitive tasks with no production rate or pace work and only occasional simple work-related decision making required. She can maintain attention and concentration for two hour intervals. [Goodman] could respond appropriately to occasional changes in the workplace, which are gradually introduced. [Goodman] could have occasional interaction with supervisors apart from what is necessary for general instruction, task competition, or training and occasional interactions with

7

>     coworkers, no tandem tasks, and no interaction with the general
>     public.

(AR 117).

In support of her RFC Analysis, the ALJ relied heavily on the state agency doctors' narrative findings. (*See* AR 121 ("[Goodman] retain[ed] the capacity to carry out unskilled tasks on a sustained basis in a competitive setting not requiring extended or intense contact with others in the work place." (citing AR 164 ("[Goodman] . . . retains capacity for work type interaction with peers and supervisors . . . . [Goodman] retains capacity to carry out unskilled tasks on a sustained basis in a competitive setting not requiring extended or intense contact with others in the work place."), 177 (same))))). Further, during the hearing, the ALJ presented the VE with the following hypothetical:

>     [A]ssume a hypothetical individual the same age and education as
>     the claimant with [Goodman's past job experience] who can
>     perform work at all exertional levels. This individual is able to
>     understand[,] carryout[,] and remember simple routine and
>     repetitive tasks with no production rate or pace work with only
>     occasional simple work-related decision-making required. Can
>     maintain attention and concentration for two-hour intervals. This
>     individual could respond appropriately to occasional changes in the
>     workplace which are gradually introduced. This individual could
>     have occasional interaction with supervisors, apart from what's
>     necessary from general instruction, task completion or training;
>     occasional interaction with coworkers; no tandem tasks; and no
>     interaction with the general public.

(AR 151-52).

The Commissioner asserts that the ALJ adequately supported her conclusion with substantial evidence and in any event, the supposedly overlooked limitations were incorporated into the RFC. (ECF 21 at 5-6). Specifically, the Commissioner argues that the ALJ accounted for Goodman's moderate limitation in her ability to interact with a supervisor by limiting her to

8

only occasional interaction with supervisors and limiting any such interaction to general instruction, task completion, or training. (*Id.* at 6 (citing AR 117)). Similarly, the Commissioner asserts that the ALJ, by limiting Goodman to occasional interaction with coworkers while not performing tandem tasks, accounted for the moderate limitation noted by the state agency doctors as to Goodman's ability to interact with coworkers and peers. (*Id.*). Finally, the Commissioner notes that the ALJ ultimately assigned a more restrictive RFC than the state agency doctors. (*Id.* at 5 (citing AR 121 ("[I]n light of [Goodman's] testimony regarding difficulty tolerating social contact as a primary symptom, the [ALJ] has accorded her greater limitations in social functioning than previously determined at the initial and reconsideration levels."))).

In her reply, Goodman contends that the limitation to only occasional interaction with supervisors assigned by the ALJ does not properly account for the qualitative nature of the state agency doctors' limitations. (ECF 22 at 2 ("Such a limitation only accounts for the qualitative "checkbox" limitations assessed by the state agency psychologists if one assumes Plaintiff can schedule her psychologically induced inappropriate behaviors.")). Similarly, she asserts that the ALJ's finding that she can maintain attention for two-hour intervals fails to account for Goodman's concentration, persistence, or pace deficits and is not supported by the record. (*Id.* at 3-4). The Court will address Goodman's arguments as to her social limitations and her concentration, persistence, or pace limitations separately.

*1. The Social Interaction Limitations*

In support of her argument, Goodman primarily relies on the Seventh Circuit Court of Appeals' decision in *DeCamp v. Berryhill*. 916 F.3d 671 (7th Cir. 2019). There, a psychologist who had reviewed the claimant's medical records completed a Psychiatric Review Technique

9

("PRT") form and a Mental Residual Functional Capacity Assessment ("MRFC"). *Id.* at 673. On the PRT form, the doctor "checked" that the claimant had moderate limitations in maintaining concentration, persistence, or pace; while on the MRFC form she noted the claimant was moderately limited in her ability:

> (1) to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances and (2) to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods.

*Id.* (internal quotation marks omitted). In the narrative section of the MRFC form, though, the same doctor stated that the claimant "may have some difficulty with concentration and persistence at times but she is able to meet the demands of basic unskilled work." *Id.* Similarly, the two state agency doctors who reviewed the claimant's medical record found that she had "moderate limitations in maintaining concentration, attention, and work pace" and "in her ability to sustain concentration and persistence." *Id.* (internal citation and quotation marks omitted). The ALJ, however, failed to account for these limitations in concentration, persistence, or pace in her hypothetical questions to the VE and later in her step-five analysis. *Id.* at 675.

On review, the Seventh Circuit remanded the matter to the administrative level for further proceedings, holding that "[t]he ALJ must explicitly account for all a claimant's limitations in her hypothetical, including limitations in concentration, persistence, or pace, unless the vocational expert has independently reviewed the medical record." *Id.* (citing *Moreno v. Berryhill*, 882 F.3d 722, 730 (7th Cir. 2018); *Lanigan v. Berryhill*, 865 F.3d 558, 563, 565 (7th Cir. 2017)). The appellate court further explained that "even if an ALJ may rely on a narrative explanation, the ALJ still must adequately account for limitations identified elsewhere in the

10

record, including specific questions raised in check-box sections of standardized forms such as the PRT and MRFC forms." *Id.* (citing *Yurt v. Colvin*, 758 F.3d 850, 859 (7th Cir. 2014)).

Here, at least as to Goodman's social limitations, the ALJ developed a logical bridge between the evidence and her conclusion. Goodman's argument primarily relies on the claim that by limiting her to "occasional" interaction with coworkers and supervisors, the ALJ only provided a quantitative limitation to the interaction, rather than the qualitative limitation found by the state agency doctors. (ECF 17 at 17-18). Indeed, there is an important distinction between qualitative and quantitative limitations. *See Hurley v. Berryhill*, No. 1:17-CV-421-TLS, 2018 WL 4214523, at *4 (N.D. Ind. Sept. 5, 2018) ("'Occasional contact' goes to the quantity of time spent with the individuals, whereas 'superficial contact' goes to the quality of the interactions. These limitations are not interchangeable, nor does one imply the other." (citation and internal quotation marks omitted)).

That being said, the state agency doctors here translated their findings into both qualitative and quantitative limitations listed in the narrative of their reports. As to the quantitative limitation, the state agency doctors proscribed any "extensive" contact with others, while to the qualitative contact, they proscribed any "intense" contact. The ALJ did not err in relying on these narratives. *See Varga v. Colvin*, 794 F.3d 809, 816 (7th Cir. 2015) ("[I]n some cases, an ALJ may rely on a doctor's narrative RFC, rather than the checkboxes, where that narrative adequately encapsulates and translates those worksheet observations." (citing *Johansen v. Barnhart*, 314 F.3d 283, 286 (7th Cir. 2002))). *Johansen* is particularly helpful here as the consultative examiner there "checked" similar boxes and provided a similar narrative as the state agency doctors did here. *See Johansen*, 314 F. at 286 (finding that limitations in the claimant's

11

ability to accept instruction and respond appropriately to criticism was "translated" into his conclusion that the claimant "could perform repetitive, low stress work").

While the ALJ in her hypothetical and RFC analysis did not use the exact language— specifically the limitation against "intense" contact—used by the state agency doctors, she did provide for the qualitative character of the potential interactions.  To begin, the RFC's limitation to simple, routine, and repetitive tasks alone may have been sufficient.  *See Milliken v. Astrue*, 397 F. App'x 218, 223 (7th Cir. 2010) ("Unskilled work would not seem to require *intense* contact with supervisors and coworkers, for example, meetings analyzing various aspects of the job, which Milliken suggests." (emphasis added)).  The ALJ though went further, limiting Goodman's interaction with supervisors to that necessary for general instruction, task completion, or training; and prohibiting tandem tasks with coworkers.  (AR 117).

Additionally, the ALJ properly explained the reasoning behind her analysis.  In support of her decision, the ALJ noted at step three that Goodman responded "fair," when asked on her function report how well she got along with authority figures.  (AR 116 (citing AR 301)). Similarly, despite Goodman's claims about her difficulty in getting along with others, Goodman was able to leave her home on her own and go to the grocery store with her mother.  (*Id.* (citing 298-300)).  Still more, at step four the ALJ noted that despite Goodman's claims regarding panic attacks and difficulties around crowds, her symptoms were at least partially controlled by medications and therapy (AR 120 (citing AR 600 ("[Goodman] notes that she is ok on her meds but at the same time she has not been taking the rx's Saphris.")), was able do chores and prepare simple meals despite living in a crowded home (AR 121 (citing AR 297)), and was able to go to the grocery store with her mother once a week (*Id.* (citing AR 297, 649)).

12

Goodman, on the other hand, points to no other evidence in the record suggesting what restrictions would properly account for her alleged social limitations. As already mentioned, Goodman bears the burden of proof at steps one through four, *see Knight v. Chater*, 55 F.3d 309, 313 (7th Cir. 1995); *Zurawski*, 245 F.3d at 886, but provides no evidence in the record tending to show that a greater restriction than the one offered by the ALJ is necessary. *See Castile v. Astrue,* 617 F.3d 923, 927 (7th Cir. 2010) ("It is [the claimant] . . . who bears the burden of proving that she is disabled, and she failed to present any medical evidence linking her chronic fatigue syndrome to the unacceptable level of absenteeism she alleges."). While Todd Snyder, Psy.D., H.S.P.P., who provided a consultative examination, noted that Goodman's "[a]voidance of situations that predispose her to panic attacks has contributed to failure to persist in many occupational pursuits and negatively impacted her social functioning" (AR 530), the ALJ discounted his opinion, stating that the opinion was "somewhat vague," did not properly provide "an assessment of "Goodman's function-by-function limitations," and was overly reliant on Goodman's own subjective statements and single hospitalization due to her mental issues (AR 122). *See Rice v. Barnhart*, 384 F.3d 363, 371 (7th Cir. 2004) ("[M]edical opinions upon which an ALJ should rely need to be based on objective observations and not amount merely to a recitation of a claimant's subjective complaints.").

The ALJ's analysis, therefore, was enough. Ultimately, "the RFC determination is one firmly within the ALJ's discretion to determine, so long as [she] sufficiently articulates [her] reasoning and the record adequately supports [her] conclusion." *Terry v. Astrue*, No. 3:09-CV-503 JD, 2011 WL 855346, at *17 (N.D. Ind. Mar. 7, 2011) (collecting cases). Here, the ALJ properly explained what evidence she relied on and which evidence she did not, and why she imposed the limitations she did. In other words, the ALJ created a "logical bridge" between the

13

evidence and her conclusion which is easily traceable. Accordingly, remand on this issue is unnecessary.

*2. The Concentration, Persistence, or Pace Limitations*

Goodman's second argument as to her alleged concentration, persistence, or pace limitations, while largely mirroring her initial argument, is more persuasive. The Seventh Circuit has instructed that "for most cases, the ALJ should refer expressly to limitations on concentration, persistence, and pace in the hypothetical in order to focus the VE's attention on these limitations and assure reviewing courts that the VE's testimony constitutes substantial evidence of the jobs a claimant can do." *O'Connor-Spinner v. Astrue*, 627 F.3d 614, 620-21 (7th Cir. 2010) ("Our cases, taken together, suggest that the most effective way to ensure that the VE is apprised fully of the claimant's limitations is to include all of them directly in the hypothetical."). Having said that, the Seventh Circuit has not insisted "on a per se requirement that this specific terminology ('concentration, persistence and pace') be used in the hypothetical in all cases." *Id.* at 619. The court explained:

> We also have let stand an ALJ's hypothetical omitting the terms 'concentration, persistence and pace' when it was manifest that the ALJ's alternative phrasing specifically excluded those tasks that someone with the claimant's limitations would be unable to perform. We most often have done so when a claimant's limitations were stress- or panic-related and the hypothetical restricted the claimant to low-stress work.

*Id.* at 619 (citing *Arnold v. Barnhart*, 473 F.3d 816, 820 (7th Cir. 2007) (upholding a hypothetical restricting the claimant to work involving low production standards and a low-stress environment, where the claimant's difficulties with concentration, persistence, or pace arose from stress-induced headaches, frustration, and anger); *Johansen*, 314 F.3d at 288-89 (allowing a hypothetical formulated in terms of "repetitive, low-stress" work to stand, where the claimant's

14

deficits in concentration, persistence, or pace stemmed from a panic disorder); *Sims v. Barnhart*, 309 F.3d 424, 427, 431-32 (7th Cir. 2002) (finding that the ALJ's restricting the claimant from jobs "involving complex work processes or unusual levels of stress" adequately accommodated the claimant's concentration problems arising, in part, from a panic disorder)).

As mentioned *supra*, the state agency doctors found Goodman to have various moderate social interaction limitations and concentration, persistence, or pace limitations. Nevertheless, each opined in the narrative section of their reports that Goodman could maintain work-type interactions with peers and supervisors and carry out unskilled tasks on a sustained basis in a competitive setting not requiring extended or intense contact with others in the workplace. (AR 164, 177). Subsequently, the ALJ limited Goodman to "simple, routine, and repetitive tasks with no production rate or pace work with only occasional simple work-related decision making required" and noted that Goodman could maintain concentration for "two hour intervals." (AR 117).

At least as to concentration, persistence, or pace limitations, this narrative description does not sufficiently "translate" Goodman's limitations. District Court Judge Philip P. Simon recently addressed a substantially similar situation, finding that an ALJ's hypothetical and RFC analysis limiting a claimant to "simple, routine, and repetitive tasks; making simple work-related decisions; occasional interaction with supervisors and coworkers, and no interaction with the public" did not sufficiently capture the claimant's "moderate limitation in the ability to carry out very short and simple instructions and *in the ability to maintain attention and concentration for extended periods*." *Kelly v. Saul*, No. 1:19-CV-033-PPS, 2020 WL 290080, at *1-2 (N.D. Ind. Jan. 21, 2020) (emphasis added). This was despite the ALJ mirroring her hypothetical and RFC after the MRFC provided by the state agency doctors who found substantially the same moderate

15

limitations as here. *Id.* at 3. As Judge Simon explained, "merely limiting [the claimant] to unskilled work with limited interaction with others . . . . does not fully explain her moderate difficulties in concentrating, persisting, or maintaining pace." *Id.*

Similarly, I cannot conclude with confidence that the state agency doctor's narrative finding that Goodman could "carry out unskilled tasks on a sustained basis in a competitive setting" adequately translated Goodman's moderate limitations in concentration, persistence, or pace. (AR 164, 177). As Judge Simon summarized in *Kelly*:

> 'The ability to stick with a given task over a sustained period is not the same as the ability to learn how to do tasks of a given complexity.' [*O'Connor-Spinner*, 627 F.3d at 620.] 'Because response to the demands of work is highly individualized, the skill level of a position is not necessarily related to the difficulty an individual will have in meeting the demands of the job. A claimant's [mental] condition may make performance of an unskilled job as difficult as an objectively more demanding job.' SSR 85-15, 1985 WL 56857, at *6. An RFC that limits a claimant to unskilled work 'by itself does not provide any information about [the claimant's] mental condition or abilities.' *Yurt*, 758 F.3d at 858 (quotation omitted)."

2020 WL 290080, at *3 (second and third alteration in original); *see also Hoeppner v. Berryhill*, 399 F. Supp. 3d 771, 777-78 (E.D. Wis. 2019).

It should be noted that unlike the ALJ in *Kelly v. Saul*, the ALJ here also limited Goodman to: (1) "no production rate or pace work" and (2) maintaining "attention and concentration for two hour intervals." (AR 117). However, it still is not clear that this language would account for Goodman's moderate limitations in concentration, persistence, or pace. As to the restriction to no production or pace work, the Seventh Circuit has "previously rejected similar formulations of a claimant's limitations because there is no basis to suggest that eliminating jobs with strict production quotas or a fast pace may serve as a proxy for including a moderate limitation on concentration, persistence, and pace." *DeCamp*, 916 F.3d at 675-76

16

(citing *Moreno*, 882 F.3d at 730, *O'Connor-Spinner*, 832 F.3d at 698); *see also Seals v. Saul,* No. 18 C 7738, 2020 WL 1689815, at *3 (N.D. Ill. April 7, 2020) ("She asked the VE, in pertinent part, about the employment prospects for someone who can handle light work, . . . simple, routine, repetitive tasks, simple work-related decisions, occasional changes and occasional interaction with supervisors and coworkers and no interaction with the public, but no tandem tasks and no production rate pace. There is no magic[-]words requirement, but under the Seventh Circuit's cases, particularly *DeCamp* and *Moreno*, this hypothetical does not suffice to account for plaintiff's difficulties in concentration, persistence, and pace." (alteration in original) (citations and internal quotation marks omitted)).

Still more, it is not clear whether the ALJ's two-hour limitation is properly supported by the record or accounts for Goodman's moderate limitations. In support of her decision as to Goodman's ability to maintain attention, the ALJ noted that she was able to prepare simple meals in ten-minute increments, could spend about an hour doing laundry when her mom tells her to, and was able to, for the most part, correctly respond to math problems during her mental status exam. (AR 116 (citing AR 297, 529)). The ALJ then concluded that Goodman could "stay on task at a sustained rate with only moderate limitation." (AR 116). That being said, it is not clear how the ALJ reached the two-hour interval figure. Neither of the two state agency doctors, or seemingly any medical record, offered such an opinion. In fact, the only medical source to offer an opinion as to whether Goodman could maintain attention for at least two hours opined that she could not. Dr. LaRissa Chism-Buggs, who filled out a "Mental Residual Functional Capacity Questionnaire," opined that Goodman was "[u]nable to meet competitive standards" in terms of her ability to maintain attention for two-hour segments. (AR 742). In other words, Dr. Chism-Buggs found that Goodman could not "satisfactorily [maintain attention for two hour segments]

17

independently, appropriately, effectively and on a sustained basis in a regular work setting." (*Id.*). While the ALJ ultimately found that Dr. Chism-Buggs's medical source statement was inconsistent with the record and her own treatment notes and entitled to "little weight," the ALJ provided no other basis for the two-hour limitation. (AR. 121-22).

Sister courts addressing substantially the same situation have found remand necessary. In *Warren v. Colvin*, a state agency doctor found the claimant to be moderately limited in, among other things, her ability to maintain concentration and pace for extended periods, perform at a consistent pace without an unreasonable number and length of rest periods, and interact appropriately with the general public. No. 12 C 3298, 2013 WL 1196603, at *3 (N.D. Ill. 2013). The ALJ gave the state agency doctor's opinion "great weight" and "incorporated all of the restrictions contained in [the state agency doctor's] conclusion ('simple routine activities' and 'brief superficial contact with others') but also added that Warren 'can sustain focus and attention for at least two-hour intervals at a time' and 'can work at a normal pace.'" *Id.* at *4. The court, however, noted that absent support in the record for the two-hour limitation the ALJ impermissibly "formulated her own independent medical opinion regarding the effects (or lack of effects) of Warren's moderate difficulties of concentration, persistence, or pace." *Id.* at *5 (citing *Rohan v. Chater*, 98 F.3d 966, 970 (7th Cir. 1996)).

Here too, as Goodman points out, it is not clear how a two-hour restriction accounts for Goodman's moderate limitations in concentration, persistence, or pace. (*See* ECF 17 at 20-21). On that point, the *Warren* court observed:

> [T]he Commissioner has in another recent case indicated that normal breaks occur every two hours during a regular 8–hour workday. *Braithwaite v. Commissioner of Social Security*, 2011 WL 1253395, at *5 n. 4 (E.D. Cal. March 31, 2011). . . . It does not seem to make sense to conclude, as the ALJ apparently did here,

18

> that an individual with moderate limitations in the ability to maintain attention and concentration would require the same frequency of breaks as a typical worker.

*Id.*; *see also Brian P. v. Saul*, No. 18 C 3498, 2020 WL 231081, at *4 (N.D. Ill. Jan. 15, 2020) ("The ALJ did not explain how any evidence in the record translates into a finding that Brian can concentrate and persist for any amount of time at a normal pace, let alone for two-hour intervals. . . . Thus, there is no logical bridge between the evidence and the ALJ's conclusion that Brian could persist in simple, routine activities in two-hour intervals, with adequate pace and perseverance."); *Kelly v. Colvin*, No. 14-CV-624-CJP, 2015 WL 1930035, at *6 (S.D. Ill. Apr. 28, 2015) ("That being said, the RFC assessment is still fatally flawed because there is a complete lack of evidence and analysis supporting the determination that plaintiff could stay focused for two hours at a time."); *Simpson v. Astrue*, No. 1:12-CV-00163-SEB, 2013 WL 1294517, at *4 (S.D. Ind. Mar. 28, 2013) ("The 'ALJ's hypothetical not only omitted reference to Plaintiff's moderate difficulties with concentration, persistence, or pace, but implied that Plaintiff indeed *had* the capability to concentrate for up to two hours. Thus, because the ALJ's hypothetical did not supply the vocational expert with adequate information regarding Plaintiff's limitations, the expert was unable to determine whether there were jobs that Plaintiff could perform.").

In summary, the ALJ failed to properly account for the moderate limitations in concentration, persistence, or pace found by the state agency doctors in both her hypothetical to the VE during the hearing and her later RFC and step-five analyses. Further, because the state agency doctors' narrative restriction of Goodman to unskilled work does not necessarily capture her previously noted limitations in concentration, persistence, or pace, the Court cannot say that Goodman's limitations were properly "translated" into the narrative RFC explanations. Finally,

19

the ALJ did not alleviate the lack of consideration of the concentration, persistence, or pace limitations by including the two-hour interval limitation, in part because the limitation is unsupported by the record, and in part because it does not actually capture the needs of a person with moderate limitations in concentration, persistence, or pace. Accordingly, remand is necessary.

## V.  CONCLUSION

For the foregoing reasons, I RECOMMEND that the Commissioner's decision be REVERSED and the case REMANDED to the Commissioner for further proceedings in accordance with this Report and Recommendation.

The Clerk is directed to send a copy of this Report and Recommendation to counsel for the parties. NOTICE IS HEREBY GIVEN that within 14 days after being served with a copy of this recommended disposition a party may serve and file specific, written objections to the proposed findings and/or recommendations. Fed. R. Civ. P. 72(b). FAILURE TO FILE OBJECTIONS WITHIN THE SPECIFIED TIME WAIVES THE RIGHT TO APPEAL THE DISTRICT COURT'S ORDER. *See generally Thomas v. Arn*, 474 U.S. 140 (1985); *Lerro v. Quaker Oats Co.*, 84 F.3d 239, 241-42 (7th Cir. 1996).

SO ORDERED.

Entered this 10th day of June 2020.

/s/ Susan Collins
Susan Collins
United States Magistrate Judge